### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **MICHELLE CORNPEACH,** | **MEMORANDUM DECISION AND ORDER AFFIRMING THE ALJ'S DECISION AND DISMISSING PLAINTIFF'S APPEAL** |
| **Plaintiff,** | |
| **vs.** | |
| | **Case No. 2:21-CV-00166-DAK** |
| **KILOLO KIJAZI, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,** | **Judge Dale A. Kimball** |
| **Defendant.** | |

This matter is before the court on Plaintiff Michelle Cornpeach's ("Plaintiff") appeal of the Social Security Administration's (the "Agency") denial of her claim for disability under Title II and Title XVI of the Social Security Act. This court has jurisdiction to review the final decision of the Commissioner of the Social Security Administration under the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c). On November 18, 2021, the court held oral argument on Plaintiff's appeal. At the hearing, Plaintiff was represented by Gayle D. Anthony, and Defendant was represented by Melissa C. Schuenemann. The court took the matter under advisement. Having fully considered the parties' briefs and arguments, the administrative record, and the law and facts relevant to the appeal, the court enters the following Memorandum Decision and Order affirming the Social Security Administration's decision.

### BACKGROUND

On September 24, 2018, Plaintiff filed a Title II and Title XVI application for disability insurance benefits, alleging disability beginning December 15, 2012. The Social Security

Administration denied Plaintiff's claim, and then Plaintiff requested a hearing. An Administrative Law Judge ("ALJ") held a hearing on Plaintiff's claim on September 24, 2020. At the hearing, Plaintiff amended her alleged onset date to September 24, 2017. The ALJ issued a denial of Plaintiff's claim on October 13, 2020. The Appeals Council denied Plaintiff's subsequent request for review – making the ALJ's decision the Commissioner's final administrative decision. Plaintiff appealed her case to the United States District Court of Utah.

Plaintiff has a history of frequent migraine headaches, which have caused light and noise sensitivity, nausea, and throbbing pain. During the relevant period since September 2017, neurologist Dr. Buchanan treated Plaintiff with medications and Botox injections. In September 2018, Plaintiff required inpatient hospitalization so that she could be monitored while undergoing IV treatment over the course of ten days. She was discharged with a new medication regime after symptoms resolved. Two weeks later, Dr. Buchanan wrote a one-paragraph letter stating that Plaintiff has a "neurologic condition that makes her unable to [sic] work in any job or field . . . I do not anticipate her being able to return to work for the next 6 months." Plaintiff required inpatient IV treatment again for telemetry monitoring purposes in December 2019, and said she was working at that time.

Plaintiff was also diagnosed with mild degenerative disc disease of the lumbar and cervical spine in June 2018, and spasmodic torticollis (contracture of the neck muscles causing the head to turn). Botox injections were helpful in treating a range of motion deficits in Plaintiff's neck. Despite these impairments, physical examinations were generally normal and documented steady gait, full motor strength in all extremities, normal tone, and normal range of motion except in Plaintiff's neck.

Agency physician Kendrick Morrison, M.D., reviewed the medical record through March 2019 and found Plaintiff could perform light work, as per the standard in 20 C.F.R. § 404.1567(b), with limited reaching overhead while avoiding concentrated exposure to noise, fumes, odors, dusts, gases, and hazards. Gregory Stevens, M.D., independently reviewed the medical record through September 2019 and agreed with Dr. Morrison.

Agency psychologist Matthew Park, Ph.D., independently reviewed the record through March 2019 and concluded Plaintiff could perform jobs with repetitive tasks, fewer steps, decreased distraction, and limited social interaction. A second agency psychologist, Lynn Johnson, Ph.D., reviewed the record through September 2019 and agreed with Dr. Park.

## LEGAL STANDARD

To be found "disabled" under the Social Security Act, the plaintiff must establish her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). Under the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. § 416.920.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. *Id*. § 416.920(b). At step two, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is severe. *Id*. § 416.920(c). At step three, the ALJ determines whether the claimant's impairment or combination of impairments is of a severity to meet, or be considered medically equal to, the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. §§ 416.920(d). Before considering step four, the ALJ must determine the claimant's residual functional capacity. *Id*. § 416.920(e). An individual's residual functional capacity is her ability to do physical and mental

work activities on a sustained basis despite limitations from her impairments. At step four, the ALJ must determine whether the claimant has the residual functional capacity to perform the requirements of her past relevant work. *Id*. § 416.920(f). At the last step, the ALJ must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience. *Id*. § 416.920(g).

## ALJ'S DECISION

The ALJ found that Plaintiff's severe impairments included degenerative disc disease of the cervical and lumbar spine, migraine headaches, obesity, depression, and anxiety. The ALJ then found Plaintiff had the residual functional capacity to perform a range of light work with certain postural limitations, and due to her "migraine headaches and other conditions" she could: (1) never be exposed to hazards such as unrestricted heights, power tools, and dangerous moving machinery; (2) only frequently be exposed to moderate noise; and (3) only occasionally be exposed to vibration and pulmonary irritants.

Due to Plaintiff's "physical pain and mental limitations," the ALJ found that Plaintiff could not perform assembly line paced work, could only occasionally interact with co-workers and supervisors, and could frequently interact with the public. Based on vocational expert testimony, the ALJ determined Plaintiff could perform her past relevant work as a retail sales clerk, and three other jobs available in significant numbers in the national economy – price marker and checker, laundry worker, and mail sorter. Thus, the ALJ found Plaintiff not disabled between September 2017 and the date of the ALJ decision in October 2020.

## STANDARD OF REVIEW

The court independently determines "whether the ALJ's decision is 'free from legal error and supported by substantial evidence.'" *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2006)

(*quoting Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005)). Under 42 U.S.C. §

405(g), "[t]he findings of the Commission of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive." "Substantial evidence is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion. It requires more than a

scintilla, but less than a preponderance." *Wall*, 561 F.3d at 1052. Although the court "will 'not

reweigh the evidence or retry the case,'" it "meticulously examine[s] the record as a whole,

including anything that may undercut or detract from the ALJ's findings in order to determine if

the substantiality test has been met." *Id.* (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th

Cir. 2007)).

## ANALYSIS

Plaintiff appeals the ALJ's decision, arguing that he failed to apply the proper legal

standards in evaluating the persuasiveness of Dr. Buchanan's letter, and that the ALJ's decision

was not supported by substantial evidence because Plaintiff's "off-task" limitations were not

included in the hypothetical given to the vocational expert. At the hearing, Plaintiff's attorney

also pointed out physical ailments from the record to demonstrate that the ALJ's decision lacked

the support of substantial evidence on the whole. The court now addresses these issues in the

order of substantial evidence and then the legal standards.

The court finds that the ALJ's decision is supported by substantial evidence because the

ALJ reasonably found that Plaintiff's statements about her symptoms were not entirely consistent

with the medical evidence and other evidence of record. The regulations provide that an ALJ will

evaluate the extent to which a claimant's allegations regarding her symptoms are reasonably

consistent with the objective medical and other evidence of record. *See* 20 C.F.R. § 404.1529(a).

Here, the ALJ summarized Plaintiff's testimony and subjective reports and concluded, after

considering all of the evidence of record, that her allegations of disabling symptoms were not entirely consistent with the record as a whole.

In the ALJ's decision, he outlined the medical evidence provided and explained in detail the legally valid reasons for his determination. One inconsistency the ALJ found between Plaintiff's statements and the medical evidence was that Plaintiff testified to having 15 to 17 migraine headaches a month, while the medical evidence raised questions about the frequency, duration, and severity of her headaches. For example, while Plaintiff frequently sought emergent care, she presented for many issues, was well-known in the emergency department, and had been noted to present with exaggerated claims. The court finds this evidence, and in particular the element of exaggerated claims, to be a persuasive factor in upholding the ALJ's credibility finding in this case.

The ALJ also observed, in his required analysis of Plaintiff's activities under 20 C.F.R. § 404.1529(c)(3)(i), that Plaintiff was still able to perform significant daily activities that seemed implausible for someone with the degree of symptoms Plaintiff alleged. For example, despite her testimony that she could not look at her cell phone due to light sensitivity, she previously reported that she watched television every day. Plaintiff also worked part-time as a hostess and waitress consistently from December 2018 through May 2020, and was apparently able to endure the lights, sounds, and smells of a restaurant environment. She stopped working in part because of COVID-19 restrictions. Further, Plaintiff engaged in outdoor activities like playing volleyball with her two children when they visited, drove across the country annually with her children, and performed household chores for herself and her elderly mother. The ALJ found that these activities suggest Plaintiff was less limited than she said. This finding is reasonable and

supported by the record, therefore this court finds that the ALJ decision is supported by substantial evidence.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence due to him not including Plaintiff's "off-task" limitations in the hypothetical given to the vocational expert. The court disagrees. The ALJ is only required to include limitations in the residual functional capacity assessment – or the hypothetical question posed to a vocational expert – that are supported by the record. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

In Plaintiff's administrative proceedings, the ALJ considered the entire medical record, Plaintiff's statements about her symptoms, and the opinions and statements of the physician and consultants and made a residual functional capacity finding he believed was supported by substantial evidence in the record as a whole.

This residual functional capacity was included in the hypothetical given to the vocational expert, and it stated that Plaintiff's residual functional capacity was limited to light work, with the following limitations: she can frequently climb ramps and stairs; she can occasionally climb ladders and scaffolds; frequently balance, stoop, kneel, crouch and crawl; frequently reach overhead bilaterally; she can never be exposed to hazards such as unrestricted heights, power tools, and dangerous moving machinery; she can frequently be exposed to moderate noise; she can occasionally be exposed to vibration and pulmonary irritants; she can perform goal-oriented but not assembly line paced work; she can occasionally interact with co-workers and supervisors; and she can frequently interact with the general public. Based on this hypothetical, the vocational expert testified that Plaintiff could perform her past relevant work as a retail sale's clerk, as well as a few other jobs.

Plaintiff argues that that the hypothetical presented to the vocational expert should have included "off-task limitations" – which are significant factors affecting Plaintiff's ability to hold down a job. These limitations include chronic pain, nausea, drowsiness, photophobia and phonophobia. Plaintiff asserts that these limitations would cause her to miss at least two days a month, or to spend 10 % of the work-day off-task, which would mean that, according to the vocational expert, no jobs would be available to her. However, the Agency argues that the record, in particular the pattern of Plaintiff's hospital visits and the medical records of Plaintiff's symptoms, supports the ALJ's decisions. The court agrees that there is reasonable support for the ALJ's conclusions in the record.

Of significant note, there were no medical opinions in the record that suggested any specific limitations for being "off-task", but the ALJ did consider Plaintiff's hospital visits, pain symptoms, and concentration issues – which make up the majority of what Plaintiff calls her "off-task" limitations – and the ALJ still came to the conclusions he did based on the record as a whole. The court has carefully reviewed the entire record as well and finds that the ALJ's decisions regarding the hypothetical given to the vocational expert and the case as a whole are reasonable and supported by the record – as demonstrated by the inconsistencies in the record between Plaintiff's allegations regarding her symptoms and the objective medical and other evidence of record.[1] Thus, since the court may not reweigh the evidence or retry the case, the court finds that the ALJ's decisions have passed the substantiality test and therefore the court cannot disaffirm based on the substantial evidence standard.

---

[1] In addition to all of the inconsistencies discussed in previous paragraphs, the court notes that Plaintiff's driving abilities, her care of her mother and herself, her inconsistent pattern of hospital visits, her shopping trips, and her recoveries between medical treatments are all relevant factors that the ALJ considered as well. These factors further support the reasonability of the ALJ's decisions.

Next, the court turns to the issue regarding the legal standards and finds that the ALJ properly applied the appropriate legal standards in his evaluation of Dr. Buchanan's letter.

The revised regulation applicable in this case is 20 C.F.R. § 404.1520c, which provides that ALJs "will not defer to or give any specific evidentiary weight . . . to any medical opinion(s) or prior administrative medical findings" about what a claimant can still do despite her limitations. 20 C.F.R. § 404.1520c(a). Rather, the ALJ need only articulate how persuasive he finds the opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c(b). Persuasiveness is determined primarily based on an opinion's supportability and consistency, and the ALJ must explain how he considered those factors. 20 C.F.R. § 404.1520c(a), (b)(2), (c)(1)-(2). The ALJ may, but is generally not required to, discuss other considerations that may bear on persuasiveness, such as the relationship of the medical source to the claimant, the source's area of specialization, and the source's familiarity with the Social Security Administration's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(b)(2)-(3) & (c)(3)-(5). The ALJ is only required to discuss these other considerations if there are "two or more medical opinions . . . about the same issue [that] are equally well-supported and consistent with the record but are not exactly the same." 20 C.F.R. § 404.1520c(b)(2)-(3).

In Plaintiff's case, the ALJ considered Dr. Buchanan's letter, acknowledged Dr. Buchanan's relationship with Plaintiff, reasonably found that the opinion letter was inconsistent with, and unsupportable by, Dr. Buchanan's treatment records of Plaintiff and other medical findings, and then found that Dr. Buchanan's opinion letter was unpersuasive. The legal standards require no more than this.

Additionally, the Agency is correct in asserting that Dr. Buchanan's opinion in his letter is an issue that is reserved for the Commissioner. Dr. Buchanan's short letter says that Plaintiff

has a "neurologic condition that makes her unable to [sic] work in any job or field . . . I do not anticipate her being able to return to work for the next 6 months." Plaintiff's ability to work is an issue that the Commissioner decides, not Dr. Buchanan. Furthermore, even if the ALJ had taken that opinion to be the proper determination of Plaintiff's ability to work, the Agency is also correct in its assertion that the Plaintiff's inability to work for six months does not establish the twelve-month durational requirement to be considered under the Act. *See* 42 U.S.C. § 423(d)(1)(A).

The ALJ properly followed all applicable legal standards in his evaluation of the medical opinions and evidence in Plaintiff's case. In so doing, the ALJ's decisions are supported by substantial evidence. Any further evaluation by this court of Dr. Buchanan's treatment notes and their significance to the case as a whole would amount to this court reweighing the evidence, which it may not do. Therefore, the court may not provide any relief to Plaintiff based on the legal standards argument.

## CONCLUSION

Based on the above reasoning, the court AFFIRMS the ALJ's decision in this case. Accordingly, Plaintiff's appeal is DISMISSED.

DATED this 22nd day of November, 2021.

BY THE COURT:

DALE A. KIMBALL
United States District Judge